IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| A & R Fugleberg Farms, Inc., Randy Fugleberg, Nick Fugleberg, and Jeremy Fugleberg, | ) ) ) ) Case No. 3:09-cv-07 |
| Plaintiffs, | ) **ORDER ADOPTING IN PART AND** |
| | ) **REVERSING IN PART THE** |
| -vs- | ) **MAGISTRATE JUDGE'S REPORT** |
| | ) **AND RECOMMENDATION** |
| Triangle Ag, LLC and Cooperative Finance Association, Inc., | ) ) |
| | ) |
| Defendants. | ) |

The undersigned judge referred Plaintiffs' Motion for Summary Judgment and Defendant Triangle Ag, LLC's Motion to Dismiss to the magistrate judge for preparation of a Report and Recommendation (Doc. #65). The Court has received a Report and Recommendation from the Honorable Karen K. Klein, United States Magistrate Judge, pursuant to 28 U.S.C. § 636, recommending that Counts 1, 2, and 3 be dismissed, that material questions of fact preclude the dismissal of Count 4, that summary judgment is premature as to Count 5, and that Plaintiffs' motion for summary judgment be denied in its entirety.

On March 18, 2010, Plaintiffs filed objections to the Report and Recommendation (Doc. #78). Plaintiffs contend that the magistrate judge misapplied the law and failed to view the evidence in the light most favorable to the nonmoving party. Rule 72(b)(2), of the Federal Rules of Civil Procedure, provides that a party may respond to another party's objections within 14 days. Defendant Triangle Ag's response was due on April 1, 2010, but it was not filed until April 5, 2010. While the response is technically untimely, the Court finds no prejudice to

1

Plaintiffs in considering Triangle Ag's responsive brief.  Now, therefore, the Court has conducted a *de novo* review of those portions of the Report and Recommendation Plaintiffs object to and carefully reviewed the entire file.  For the reasons explained below, the Report and Recommendation is **ADOPTED in part** and **REVERSED in part**.

## SUMMARY OF DECISION

Neither the statute of frauds nor the parol evidence rule bars Plaintiffs' claims and thus the Court adopts the magistrate judge's recommendation that Defendant Triangle Ag's motion to dismiss on these grounds be denied.  The parties have not had an opportunity to conduct discovery with regard to any of the claims; therefore, summary judgment is premature as to all claims.  To the extent that the Report and Recommendation is contrary to this conclusion, it is reversed.  Further, based on the limited evidence in the record, there are genuine issues of material fact precluding summary judgment as to each of the claims.  Accordingly, Plaintiffs' motion for summary judgment is **DENIED** as to each claim and Defendant Triangle Ag's motion to dismiss/for summary judgment is **DENIED** as to each claim.  To the extent that the Report and Recommendation is contrary to this conclusion, it is reversed.

## FACTUAL BACKGROUND

Plaintiffs entered into an oral contract to purchase fertilizer from Triangle Ag (Doc. #6, Aff. Wes Roll ¶ 5).  The contract price was for a total amount of $381,150.00, which Plaintiffs paid up front (Id.).  Plaintiffs financed the purchase price through a loan obtained from Cooperative Finance Association.  While Plaintiffs and Triangle Ag agree there is a binding purchase agreement, they disagree about whether the contract included a cancellation provision. The limited evidence in the record on this issue consists of contradictory affidavits (Docs. #20,

21, 22, 55, 60).

Plaintiffs assert that Kevin Poppell and Brad Fronning, representatives of Triangle Ag, told them they could cancel the contract for $50 per ton on each ton of remaining fertilizer to be delivered plus pay interest on the loan with Cooperative Finance Association (Docs. #20, 21, & 22). Plaintiffs allege the cancellation provision was a material term of the purchase agreement, which induced them to enter into the contract. Brad Fronning counters that he did not agree that Plaintiffs could cancel the purchase agreement by paying $50 a ton (Doc. #55, Aff. Brad Fronning). Fronning admits to negotiations regarding a cancellation provision, but claims he told Plaintiffs that they would have to sign a written contract to include such a provision (Id.). Kevin Poppel, the other Triangle Ag representative involved in the contract, is no longer employed by Triangle Ag (Doc. #6, Aff. Roll ¶4). Further, Cooperative Finance Association avers that none of its employees or representatives told Plaintiffs they could avoid liability on the loan by repaying only the outstanding interest (Doc. #60, Aff. Bruce Mead).

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, in contrast to a motion to dismiss, a court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn therefrom to determine whether summary judgment is appropriate. Delzer v. United Bank of Bismarck, 459 N.W.2d 752, 755 (N.D. 1990). The parties filed various affidavits. The magistrate judge converted Defendant Triangle Ag's motion to dismiss into a motion for summary judgment. In doing so, the evidence must be viewed in a light most favorable to the nonmoving party, and the nonmoving party enjoys the benefit of all reasonable inferences to be drawn from the evidence. Smith v. Ashland, Inc., 250 F.3d 1167, 1171 (8th Cir. 2001).

## ANALYSIS

### 1. Statute of Frauds

Triangle Ag contends the oral contract is unenforceable under the statute of frauds. The magistrate judge's analysis of this issue is thorough and the undersigned agrees it is a correct interpretation of North Dakota law and hereby adopts the reasoning in its entirety. For the reasons stated in the magistrate judge's Report and Recommendation, Triangle Ag's motion to dismiss/for summary judgment on the basis of the statute of frauds is **DENIED**.

### 2. Parol Evidence Rule

While not specifically addressed by the magistrate judge, Triangle Ag also contends Plaintiffs' claims are barred by the parol evidence rule, codified at N.D. Cent. Code § 9-06-07 and § 41-02-09. "The parol evidence rule is a rule of substantive law and precludes use of evidence of prior oral negotiations and agreements to vary the terms expressed in a written contract." Spitzer v. Bartelson, 773 N.W.2d 798, 802 (N.D. 2009) (quoting Des Lacs Valley Land Corp. v. Herzig, 621 N.W.2d 860, 862 (N.D. 2001)). The rule, however, does not bar competent testimony as to any matter on which the contract is silent, and which is not inconsistent with the contractual terms. Id.

Triangle Ag appears to claim that the alleged oral cancellation provision, even if it exists, is a separate oral agreement barred by the parol evidence rule. In this case, there is no written contract. There is no uncontradicted proof of the terms of the purchase agreement. Viewing the evidence in the light most favorable to the nonmoving party, a reasonable fact-finder could find that a cancellation provision as alleged by Plaintiffs is not a contradictory term of the oral contract, but rather an additional term of the parties' agreement. Summary judgment on Triangle

Ag's claim that the parol evidence rule bars evidence of the alleged cancellation provision is **DENIED**.  See Curtis Const. Co., Inc. v. American Steel Span, Inc., 707 N.W.2d 68, 72 (N.D. 2005) (the trier of fact decides the terms of an oral contract).

### 3. Rescission of Contract Claims (Counts 1 and 2)

"Where an agreement is oral rather than written and must be proved by the testimony of the parties, summary judgment is inappropriate to resolve disputed issues of material fact as to the terms of the contract." McAdam v. Dynes, 442 N.W.2d 914, 916 (N.D. 1989). Whether or not the oral contract included a cancellation provision is in dispute. Resolution of this dispute may affect the ultimate result in the case; however, at this stage in the proceeding the terms of the contract are in dispute, and, therefore, summary judgment is inappropriate. See id.

Moreover, the North Dakota Supreme Court has recognized that fraud perpetrated to induce a party to enter an agreement may be a ground for rescission. See Heart River Partners v. Goetzfried, 703 N.W.2d 330, 340 (N.D. 2005) (explaining that fraud perpetrated to induce a party to enter into an agreement is a ground for rescission, but is not a ground for reformation). Triangle Ag contends that the cancellation provision amounts to a future promise, which is not actionable to warrant rescission of the contract, citing Sperle v. Weigel, 130 N.W.2d 315, 319 (N.D. 1964). Plaintiffs contend Triangle Ag representatives induced them to enter the contract by agreeing the contract could be cancelled subject to payment of $50 per ton, conduct they believe constitutes actionable fraud, relying in part on Delzer v. United Bank of Bismarck, 559 N.W.2d 531, 534 (N.D. 1997).

The Court cannot say that at this stage in the proceedings there is no evidence that may be obtained during discovery in which a reasonable jury could find the facts necessary to entitle

Plaintiffs to relief.  Cherne Contracting Corp. v. Marathon Petroleum Co., LLC, 578 F.3d 735, 740 (8th Cir. 2009) (noting plaintiff is entitled to summary judgment when no reasonable jury could find the facts necessary to entitle a plaintiff to relief).  Accordingly, the magistrate judge's decision is reversed and Defendant Triangle Ag's motion to dismiss/for summary judgment on Counts 1 and 2 is **DENIED** as premature.[1]

### 4. Consumer Fraud (Count 3)

The magistrate judge recommends dismissing Plaintiffs' consumer fraud claim because "there was no public interest implicated in the transaction at issue." (Doc. #73, Report and Recommendation on Motion to Dismiss and Motion for Summary Judgment, p. 8).  The magistrate judge also concluded that mere breach of contract, without more, does not amount to a consumer fraud claim.  Id. at pp. 8-9.

Consumer fraud statutes are remedial in nature and must be liberally construed in favor of the consumer.  State ex rel. Spaeth v. Eddy Furniture Co., 386 N.W.2d 901, 903 (N.D. 1986). North Dakota's Consumer Fraud Act provides, in relevant part:

> The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

N.D. Cent. Code § 51-15-02.  The Act further provides:

> Except as provided in section 51-15-02.3 [facilitating and assisting a person engaged in any act or practice in violation of chapter 51-15], this chapter does not bar any claim for relief by **any person against any person** who has acquired any moneys

---

[1] Nothing in this Order should be construed as an opinion on the merits of the claims. If, at the end of discovery, Defendants believe the claims fail as a matter of law, a motion may be brought at that time.

>or property by means of any practice declared to be unlawful in this chapter. If the court finds the defendant knowingly committed the conduct, the court may order that the person commencing the action recover up to three times the actual damages proven and the court must order that the person commencing the action recover costs, disbursements, and actual reasonable attorney's fees incurred in the action.

N.D. Cent. Code § 51-15-09 (emphasis added).

Several years ago, following a certified question of law from this Court, the North Dakota Supreme Court interpreted both of these provisions in the context of farmers who purchased confection sunflower seeds and then alleged the seller made knowing and deceptive misrepresentations about the seed. Jorgenson v. Agway, Inc., 627 N.W.2d 391 (N.D. 2001). Jorgenson involved farmers who bought and planted confection sunflower seed for purposes of cultivation, and then sued for violation of the deceptive practices provisions of the North Dakota Consumer Fraud Act, violation of the false advertising provisions of the North Dakota Consumer Fraud Act, breach of implied warranties of merchantability and fitness, and breach of express warranties.

The defendants claimed that the North Dakota Consumer Fraud Act did not apply as a matter of law. The Supreme Court concluded that the farmers are "persons" who may sue under the Act, the definition of "merchandise" is broad enough to include confection sunflower seeds, and the Act does not preclude the purchase of goods used to cultivate a crop for subsequent sale. Id. at 394; See DJ Coleman, Inc. v. Nufarm Americas, Inc., No. 1:08-cv-051, 2010 WL 890835, *11-12 (D.N.D. Mar. 12, 2010) (finding N.D. Cent. Code ch. 51-15 applies to a farmer's purchase of herbicide for use in his commercial farming operations); Hanson v. Acceleration Life Ins. Co., A3-97-152, 1999 WL 33283345 (D.N.D. Mar. 16, 1999) (noting "[a] private right of action is also apparent under North Dakota's consumer fraud statutes" in a case involving

nursing home insurance policies purchased by senior citizens).

The North Dakota Supreme Court has not specifically addressed whether a plaintiff must demonstrate a public benefit or something in addition to an alleged breach of contract before a cognizable claim will lie under the North Dakota Consumer Fraud Act. "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears." Farmers Union Mut. Ins. Co. v. Associated Elec. & Gas Ins. Services Ltd., 737 N.W.2d 253, 256 (N.D. 2007). Courts need not look to legislative history when the statutory language is unambiguous. Id. If, however, the language in a statute is ambiguous or doubtful in meaning, a court may consider extrinsic aids, including legislative history, to determine legislative intent. Id.

North Dakota's Consumer Fraud Act is clear that an action may be brought by "any person against any person who has acquired any moneys or property" by means of an unlawful practice, as defined in ch. 51-15. N.D. Cent. Code § 51-15-09. Nothing in the plain language of the statute requires a plaintiff to demonstrate the action will benefit the public or that a public interest is implicated. Imposing a public interest requirement is contrary to the plain language of the Act.

As to the other finding by the magistrate judge - that is, a plaintiff must show more than mere breach of contract before a cognizable consumer fraud claim lies, the Act, on its face, does not impose such a requirement. Moreover, after studying the legislative history of the provision at issue, it is clear the legislature intended to allow any consumer in North Dakota to bring a claim under the Act if that person was deceived by a seller.

When the statute was originally enacted, it provided as follows:

> The provisions of this Act shall not bar any claim against any person who has acquired any moneys or property, real or personal, by means of any practice herein declared to be unlawful.

N.D. Cent. Code § 51-15-09 (1965).

In 1991, the legislature amended the statute to read:

> The provisions of this chapter do not bar any claim **for relief by any person** against any person who has acquired any moneys or property by means of any practice declared to be unlawful in this chapter. **If the court finds the defendant knowingly committed the conduct, the court may order that the person commencing the action recover up to three times the actual damages proven and the court must order that the person commencing the action recover costs, disbursements, and actual reasonable attorney's fees incurred in the action.**

N.D. Cent. Code § 51-15-09 (effective July 7, 1991) (emphasis added). Representative Bill Oban introduced the amendment with the intent "to allow for private recourse in consumer fraud actions." *Proposed Amendment of Consumer Fraud Statute: Hearing Before House Judiciary Comm.,* HB 1255, 52d Leg. (N.D.1991). The goals behind the amendment were (1) to provide an incentive for private individuals to bring legal action against sellers guilty of fraud and deception; (2) to provide a remedy for the injured; (3) to deter future seller misconduct; and (4) to encourage attorneys to accept cases of consumer fraud. Id. The North Dakota Attorney General's Office supported the amendment, noting that many cases are brought to its Consumer Fraud Division, but due to the limited staff and/or lack of authority to represent private individuals, the office was unable to pursue the cases. Id. (statements of Tom E. Engelhardt and Dave Huey).

The clear intent behind the legislation was to give individuals an opportunity to pursue, on their own, consumer fraud claims. The history and purpose behind the statute does not

9

support a finding that a plaintiff must show some sort of conduct in addition to a breach of contract in order to pursue a claim under North Dakota's Consumer Fraud Act. All that plaintiffs need to show is that they were aggrieved by a person "who has acquired any moneys or property by means of any practice declared to be unlawful" under the Act. N.D. Cent. Code § 51-15-09. Plaintiffs have alleged that Triangle Ag used or employed "deceptive acts, deceptive practices, false pretenses, false promises, or misrepresentations" in violation of N.D. Cent. Code § 51-15-02 in order to induce them to enter the contract. Plaintiffs' allegations allege a claim under North Dakota's Consumer Fraud Act. Thus, Plaintiffs should be allowed an opportunity to conduct discovery in order to obtain evidence to support their claim.

Finally, "[c]auses of actions for fraud and breach of contract are not inconsistent." Delzer, 559 N.W.2d at 533 n. 2. Other courts have concluded that a claim for fraud may be cognizable, even in the presence of a contract, when the alleged fraud relates to inducement to enter the contract, not only the performance of the contract. See Florian Greenhouse, Inc. v. Cardinal IG Corp., 11 F.Supp.2d 521, 528 (D.N.J. 1998) (noting action was not "garden variety" breach of contract but more closely resembled a fraud in the inducement claim); Winey v. William E. Dailey, Inc., 636 A.2d 744, 747-49 (Vt. 1993) (affirming verdict that defendant breached contract, but reversing directed verdict against plaintiff on fraud in the inducement and consumer fraud claims because she presented sufficient evidence to raise a fact question regarding whether the defendant made a knowing misrepresentation about the contract).

This Court must construe the North Dakota Consumer Fraud Act in favor of the consumer and view the evidence in the light most favorable to the nonmoving party. In doing so, the Court cannot say there is no evidence that may be obtained during discovery in which a

reasonable jury could find the facts necessary to support a claim under the Act. The magistrate judge's decision recommending dismissal of Plaintiffs' Consumer Fraud Act claim is reversed, and Defendant Triangle Ag's motion for summary judgment on Count 3 is **DENIED**.

### 5. Declaratory Judgment Counts (Counts 4 and 5)

Plaintiffs move for a declaration that they have the right to cancel the contract by paying $50 a ton for the remaining amount of the fertilizer to be delivered and by tendering payment of the outstanding interest owed on the loan obtained through Cooperative Finance Association (Count 4).  Plaintiffs also move for a declaration that they are allowed to cancel their contract with CFA by tendering the outstanding amount of interest owed under their financing agreement (Count 5).

The parties dispute the terms of the oral contract.  Thus, genuine issues of material fact preclude summary judgment as to Count 4.  Triangle Ag's motion to dismiss Count 4 and Plaintiffs' motion for summary judgment as to this claim are **DENIED**.

CFA opposes Plaintiffs' motion for summary judgment on Count 5, contending that the motion is premature as no discovery has been conducted.  The Court agrees with the magistrate judge's decision that Plaintiffs' motion for summary judgment on Count 5 is premature. Plaintiffs' motion for summary judgment on Count 5 is **DENIED**.

### CONCLUSION

For the foregoing reasons, the magistrate judge's Report and Recommendation is adopted in part and reversed in part.  The appropriate course of action is to allow the parties an opportunity to conduct discovery as to each of Plaintiffs' claims.  If, at the close of discovery, any party believes that it is entitled to summary judgment as a matter of law, a motion can be

made at that time.

**IT IS SO ORDERED.**

Dated this 7th day of April, 2010.

                                                   */s/ Ralph R. Erickson*
                                                  Ralph R. Erickson, Chief Judge
                                                  United States District Court