IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| A & R Fugleberg Farm, Inc., Randy Fugleberg, Nick Fugleberg, and Jeremy Fugleberg, | ) ) ) ) | Case No. 3:09-cv-00007 |
| Plaintiffs, | ) ) ) | **ORDER ON MOTIONS AND APPEAL OF MAGISTRATE'S ORDER ALLOWING PLAINTIFF'S THIRD AMENDED COMPLAINT TO ADD PUNITIVE DAMAGES CLAIM** |
| vs. | ) ) ) | |
| Triangle Ag, LLC and Cooperative Finance Association, Inc., | ) ) ) | |
| Defendants. | ) | |

## **INTRODUCTION**

Before the Court is Triangle Ag, LLC's (hereafter "Triangle Ag") appeal of an Order by the Magistrate Judge allowing A & R Fugleberg Farms, Inc., Randy Fugleberg, Nick Fugleberg, and Jeremy Fugleberg (hereafter collectively "the Fuglebergs") to file its third amended complaint which added a claim for punitive damages. (Doc. # 208, 186). The matter came on for hearing before the Court on September 26, 2011. (Doc. # 256). Defendant Cooperative Finance Association, Inc. (hereafter "Cooperative Finance") did not take a position on the appeal.

Additionally, defendant Triangle Ag has filed a motion seeking summary judgment in its favor on "all Plaintiffs' claims for punitive damages." (Doc. # 201). The Fuglebergs resist. (Doc. #227).

Because the Court finds no evidence in the record of any independent tortious conduct or act by Triangle Ag justifying a claim for punitive damages, the Magistrate Judge's order allowing the filing of the Third Amended Complaint (Doc. #216), which included a claim for exemplary damages, is **REVERSED** and the Fuglebergs' Third Amended Complaint is ordered stricken from

the record.

Also before the Court is Triangle Ag's motion for sanctions against Plaintiff Randy Fugleberg in his individual capacity (Doc # 198), and its motion to dismiss the Individual Claims of Randy Fugleberg (Docket #206). Triangle Ag asserts that Randy Fugleberg has stated in his deposition that he has no claim in his personal capacity against Triangle Ag and that his refusal to dismiss his claim against Triangle Ag is subject to sanctions under Rule 11. (Doc. 198, 199). Because the Court believes that Randy Fugleberg remains a defendant in Triangle Ag's counterclaim against him, remains personally obligated on one of the notes to Cooperative Finance and that his inclusion in the lawsuit has not resulted in any extra unnecessary expense for Triangle Ag the Court **DENIES** Triangle Ag's Motion (Doc. #198 and #206)) so as to be able to provide complete relief in the trial of this matter.

Triangle Ag also seeks summary judgment against the Fuglebergs on all claims. (Doc. # 188). As stated above, the Court finds no evidence of independent tortious acts or conduct and finds only claims arising out of an alleged breach of contract. Therefore, Triangle Ag's Motion ( Doc # 188) for Summary Judgment on the Fuglebergs' claims on counts 1, 2, 3, 5, and 7 is **GRANTED.** To the extent the motion seeks judgment on the Fuglebergs' claim for breach of their fertilizer contract, the motion is **DENIED**. Similarly, the Fuglebergs seek summary judgment on the Triangle Ag contract claim to the extent that it seeks specific performance of the contract. Because the Court believes that fact questions remain on the terms of the oral contract between the Fuglebergs and Triangle Ag, the Fuglebergs' motion is **DENIED.** All breach of contract claims and counter claims between the Fuglebergs and Triangle Ag survive for trial on the matter.

Finally, Cooperative Finance seeks summary judgment on its promissory notes with the

Fuglebergs (Doc. #190). While the Court can find no defense to the notes that are all past due, there is conflicting evidence as to the extent and nature of the agency relationship between Triangle Ag and Cooperative Finance rendering summary judgment on the notes improper. Therefore, the Motion for Summary Judgment against the Fuglebergs and in favor of Cooperative Finance is **DENIED.**

## FACTUAL BACKGROUND

The Fuglebergs entered into an oral contract to purchase farm fertilizer from Triangle Ag. (Doc # 97 at ¶ 6-9; Doc. # 101 at ¶ 10). The relationship between Triangle Ag and Cooperative Finance is not plainly established in the record, but it appears that Cooperative Finance was involved in financing various transactions between Triangle Ag and its customers. The Fuglebergs signed promissory notes in favor of Cooperative Finance to facilitate the purchase of the fertilizer in question in this case. The financing documents dated July 9, 2008, consist of three "Input Finance Agreements" between Cooperative Finance and Jeremy, Nicholas, and Randy Fugleberg with A & R Fugleberg Farm Inc., a co-maker only on the Randy Fugleberg note. (Doc. #151-6). Each Input Finance Agreement has a face amount of $150,000. Id. The notes were payable on February 16, 2010, and remain unpaid. Triangle Ag asserts it has paid Cooperative Finance $60,000 on a separate agreement. (Doc. #151-9).

Following the execution of the financing documents, Cooperative Finance sent the loan proceeds to Triangle Ag. (Doc. # 151-14 at p. 33). Triangle Ag then purchased fertilizer from third parties in anticipation of filling the order contemplated by the oral agreement with the Fuglebergs. Id. Some of the fertilizer purchased in anticipation of filling the contract is currently at Triangle Ag's storage facility in Ulen, Minnesota. While the fertilizer originally contemplated in the contract

consists of some 352.5 tons of urea fertilizer and 135 tons of MES-15 fertilizer, Triangle Ag reports that the MES-15 is the only identifiable fertilizer attributable to the contract in its possession, because it was ordered specially for the Fuglebergs. Id. at 56-58. While Triangle Ag has sufficient urea in storage to satisfy the contract, it regularly sells this product and specifically identifying which urea is designated to the Fugleberg contract is impossible. Id. at 56. Urea fertilizer is essentially fungible, and which physical quantity is used to fill any particular order is unknowable until the urea is actually loaded and shipped. Accordingly, the urea fertilizer in this case is not specifically identifiable to the contract, while it is possible that the MES-15 fertilizer is.

It is undisputed that Triangle Ag has offered delivery of conforming fertilizer to the Fuglebergs, which they have refused. The Fuglebergs contend that they hold a right to cancel the oral contract, the contract contained a negotiated and bargained for provision allowing them to cancel the contract at any time prior to delivery upon payment of a $50 per ton cancellation fee to Triangle Ag, together with accrued interest owed to Cooperative Finance. Under the Fugleberg version of the contract, in the event of cancellation and payment of the appropriate fees, the obligation between Triangle Ag and the Fuglebergs would be satisfied in full. (Doc #97 ¶ 6-7). Exercising this purported right of cancellation, the Fuglebergs have sent Triangle Ag a check for $24,350, representing the "cancellation" fee, and interest payments totaling $5,295.16. (Doc. # 97, ¶ 10, Doc. # 101, ¶ 11).

Certain facts can be established from the record: (1) Triangle Ag is storing some or all of the fertilizer sufficient to fill the Fuglebergs' contract requirements; (2) The Fuglebergs have tendered the putative cancellation fee, which has been refused by Triangle Ag on the ground that no such contractual provision was encompassed in the oral agreement; (3) Triangle Ag has an account that

4

shows the Fuglebergs have a prepaid balance for fertilizer that Triangle Ag is obligated to deliver; (4) Neither the Fuglebergs nor Triangle Ag have repaid the loans to Cooperative Finance, though Triangle Ag has apparently paid $60,000 to Cooperative Finance under the terms of a separate agreement arising out of a default provision.

Both Triangle Ag and the Fuglebergs agree there is an oral contract between them for the delivery of 352.5 tons of urea fertilizer and 135 tons of MES-15 fertilizer at a set price. The dispute is that the Fuglebergs claim they have cancelled the agreement pursuant to its terms while Triangle Ag claims no such cancellation provision exists. Rather than accept delivery of the fertilizer under the contract, the Fuglebergs tendered the putative cancellation fee and the interest payable. Triangle Ag denies the existence of the cancellation provision and demands that the Fuglebergs accept delivery of the product. Each claims that the other is in breach of their oral contract.

The dispute over the existence of the cancellation provision stems from the events surrounding the contract formation. In 2008, the Fuglebergs met with Kevin Poppel and Brad Fronning of Triangle Ag on a country road in rural North Dakota to discuss the possible purchase of fertilizer. The terms of the purchase were discussed, but led to no written agreement. The Fuglebergs allege that "Fronning and Poppel told them that they could cancel the purchase contract at any time simply by paying a cancellation fee of $50.00 per ton on any fertilizer left to be delivered, plus interest on the loan from [Cooperative Finance]." (Doc. # 216). The Fuglebergs also claim Poppel told them the purchase of fertilizer was "a no-brainer" because if the price of fertilizer dropped, the Fuglebergs could get out of the their contract by paying the modest $50 per ton cancellation fee plus interest. If the price of fertilizer went up, however, they could take delivery of the fertilizer at the locked-in price. Thus described, the contract contemplated "a hedge" against

5

future fertilizer price increases. The Fuglebergs contend they would not have entered into the contract without the cancellation provision. (Doc. # 97 ¶ 7).

While these discussions were taking place, the price of fertilizer was skyrocketing. (Doc #151-10, Poppel Deposition at 51-52). This movement in the market price made the hedge aspect of the agreement more attractive by allowing the Fuglebergs to lock in fertilizer at a potentially lower price. Id. at 55.

Roll testified that at least one previous transaction between the Fuglebergs and Triangle Ag had been oral, but starting in 2008, Triangle Ag began requiring agreements for future fertilizer deliveries to be in writing because of the volatility of the fertilizer markets. (Doc # 151-14, Roll Deposition at 20-22). Triangle Ag claims that it prepared a written agreement relating to the sale in question but the Fuglebergs never executed it. Id. The Fuglebergs contend no such written agreement was ever contemplated or presented. No written contract has ever been produced by any party. Even though no written contract had been executed, Triangle Ag purchased fertilizer to fill the order. (Doc. #151-14). On July 9, 2008, at about the same time as the order, the Fuglebergs signed the financing agreements with Cooperative Finance. The proceeds of these loans were sent to Triangle Ag and it used them to purchase fertilizer sufficient to cover the order. (Doc. #151-14).

The price of fertilizer markedly declined in the fall of 2008, and in November, the Fuglebergs tendered their checks for the cancellation fee and the interest expense. The Fuglebergs assert that at this point they had "cancelled" the contract, although it would appear to the Court that this would constitute full and final performance of the contract if the agreement is as described by the Fuglebergs.

Triangle Ag viewed this tender as an attempted novation of an oral contract, rejected the

offer, and returned the checks. (Doc. # 101, ¶ 11). In their pleadings, the Fuglebergs seek: (1) Rescission of the purchase agreement either as a matter of law or on equitable grounds; (2) Cancellation of the financing agreement with Cooperative Finance; (3) Money damages, costs, disbursements and attorney fees based on a breach of contract; (4) Money damages based upon negligent misrepresentation and equitable estoppel; (5) Treble damages under North Dakota Century Code §51-15 and (6) Punitive damages. The Fuglebergs also seek declaratory relief affirming the contract and declaring that the contract contains a provision allowing "cancellation" with a payment of the $50 per ton fee and payment of outstanding interest on the Cooperative Finance Notes. (Doc. # 216). The Third Amended Complaint appears to be identical to the Second Amended Complaint except for the addition of the requested punitive damages relief and is the subject of this Appeal.

## **DISCUSSION**

### **A. PUNITIVE DAMAGES APPEAL**

#### **1. Was Triangle Ag's Appeal Timely?**

Triangle Ag appeals the magistrate judge's order allowing the Fuglebergs to amend their complaint to add punitive damages in their prayer for relief. (Doc. # 186). The appeal was filed on May 9, 2011. Under Local Rule 72.1(D)(2) "any party may appeal from a magistrates judge's determination of a non-dispositive matter in a civil case ....within fourteen days after being served with a copy of the magistrate judge's order, unless a different time is prescribed by the magistrate judge." Triangle Ag filed its appeal on May 18, 2011, which is within the fourteen day window. (Doc. # 208). It filed its supporting Memorandum on the same day. (Doc. # 209). Triangle Ag's appeal was timely.

#### **2. Was Allowing the Amendment Contrary to Law?**

Under Local Rule 72.1(D(2) the "district judge must consider the appeal and set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." By the language of the rule, review is mandatory if the magistrate judges's ruling is contrary to the law. Because this Court finds that the issue is a simple alleged breach of a term of an oral contract with no additional independent tortious acts, punitive damages are not recoverable.

This is an action originally commenced in state court and removed on the ground of diversity jurisdiction. (Doc. # 1). In diversity cases, this court applies the choice of law provisions of the forum state. John T. Jones Construction Co. v. Hoot General Construction Co., 613 F. 3d 778, 782 (8th Cir. 2010). North Dakota applies Professor Leflar's five choice of law influencing factors. Nodak Mutual Ins. Co. v. Wamsley, 2004 ND 174, ¶ 13, 687 N.W.2d 226. These factors are predictability of results, maintenance of interstate order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law. Daley v. American States Preferred Ins. Co., 1998 ND 225, ¶ 11, 587 N.W.2d 159. A review of the allegations and the deposition testimony discloses that the oral agreement was negotiated at least in part in North Dakota with North Dakota farm owners, for delivery of goods into the state of North Dakota. The place of performance (or breach) is North Dakota. North Dakota has an interest that contracts formed in the state are performed according to their terms and that a remedy for breach is available for those denied the benefit of their bargain. The parties do not dispute that this case is governed by North Dakota law, and the Court agrees that this is the law to be employed.

Under North Dakota law, punitive damages may be awarded in "any action for the breach of an obligation *not arising from contract*, when the defendant has been guilty by clear and convincing evidence of oppression, fraud, or actual malice..." N.D. Cent Code § 32-03.2-11

8

(emphasis added). The North Dakota Supreme Court has allowed punitive damages in contract cases where an independent tort separate and distinct from the contract breach is present. Pioneer Fuels, Inc. v. Montana Dakota Utilities Co., 474 N.W.2d 706, 710 (N.D. 1991). The court noted, "[W]hile the intentional tort may occur at the time of and in connection with the breach, or may arise out of the same transaction, it is not committed by merely by breaching the contract, even if such act is intentional." Id. Thus, the mere refusal to perform under the terms of the contract, even if intentional, malicious, and in bad faith, will not convert a claim for breach of contract into a tort action allowing punitive damages without some additional showing of tortious conduct. That tortious conduct must exist independently of the breach of contract and must cause actual damage to the person claiming the right to punitive damages. Id. at 709-10.

The rationale of Pioneer Fuels is one of economic efficiency. The theory contends that the aggrieved party to a breached contract should receive the benefit of his bargain and the breaching party should pay damages related to the breach, but not be punished for an economic decision. Only if the breach is accompanied by an independent intentional tort should there be damages awarded to punish a party. Delzer v. United Bank, 1997 ND 3, ¶ 8, 559 N.W.2d 531. For example, in the course of negotiating a contract a party might engage in actual fraud—i.e. if someone "fraudulently induces another to enter into a contract by making a promise with no intention of performing it, the conduct is actionable fraud." Id. at ¶ 9. The "gist of the fraud in a [fraudulent inducement] case is not the breach of the agreement to perform, but the fraudulent intent of the promissor and the false representation of an existing intention to perform, where such an intent is in fact nonexistent." Id. (quoting Foster v. Dwire, 51 N.D. 581, 199 N.W. 1017, 1021 (1924)).

The facts in Delzer are instructive. In Delzer, the bank gave the Delzers a $150,000

operating loan, and promised an additional $150,000 for the purchase of cattle. Id. at ¶ 2. In reliance, the Delzers and their sons pledged all their assets as collateral. Id. Despite the pledge, the bank never made the loan to purchase the cattle. Id. The Delzers' claim of deceit was based on the same elements as the contract breach claim, plus the additional element "that when [the bank] promised to loan the Delzers an additional $150,000 for the purchase of cattle [it] did not intend to perform its promise." Id. at ¶ 10. The second promise, which was made with no intention of performance, was an additional independent tortious act not inherent in the contract breach. Id. In other words, it constituted a fully independent actionable tort.

Under N.D.C.C. § 32-03.2-11, a party cannot seek punitive damages in its original complaint. Rather, a party must subsequently allege the applicable basis for awarding the punitive damages and bring forward an affidavit or deposition testimony supporting its claim that these damages are allowable. N.D.C.C. § 32-03.2-11 (1). The Fuglebergs contend that punitive damages are allowable in this case because of the actions of Poppel and Fronning as representatives of Triangle Ag. They contend that Poppel and Fronning made the alleged guarantees regarding the cancellation provision, and characterized this deal as a "no-brainer" with the knowledge that Triangle Ag would not honor the cancellation provision after an agreement was reached. The Fuglebergs assert that Triangle Ag's failure to present a written contract containing the cancellation term as agreed is clear evidence of a lack of intention to perform.

On the evidence in the record, it is impossible to conclude that Poppel, Fronning, or Triangle Ag knew at the time the alleged statements were made that Triangle Ag never intended to perform under the terms of the contract. The only evidence the Fuglebergs have regarding Triangle Ag's intentions at the time of contract formation are its current refusal to accept the payments proffered

by the Fuglebergs and the statements that the contract was a "no-brainer." The Fuglebergs present no persuasive evidence that the propriety of the payment refusal is anything but a dispute over the terms of the contract.

The Fuglebergs' attempt to seek punitive damages is further crippled by evidence of Triangle Ag's actual conduct after the contract was formed. The fact that Triangle Ag covered its sale by purchasing the fertilizer necessary to fulfill the Fuglebergs' contract reflects an intention to perform its contractual obligations. Triangle Ag's actions cannot be compared to the facts in Delzer, where the bank president actually testified that the bank "did not intend to provide the Delzers with money for cattle" even though it had specifically promised to do so. Delzer at ¶10, n.3. No similar evidence exists in this case, rather the evidence reflects an intention by Triangle Ag to fulfill its obligations. There is no evidence sufficient to demonstrate a separate tort as needed to support the punitive damages claim. "[T]here must be some additional, independent facts not connected to the manner of the breach of contract to support tort and punitive damage claims." Pioneer Fuels, at 45 Simply put there is no evidence of a tort—there is evidence of a contract dispute.

The Court is similarly unpersuaded that the comments referring to the deal as a "no-brainer" were made with fraudulent intent. Instead, these comments appear to be a classic case of non-actionable puffing in a sales context. See In re Hutchinson Technology, Inc., 536 F.3d 952, 961 (8th Cir. 2008)(no reasonable investor relies on statements of seller as to future market prices or conditions). .

In Dakota Grain v. Ehrmantrout. 502 N.W.2d 234, 236 (N.D. 1993), the North Dakota Supreme Court chastised the parties for making the case "much more complex and confusing than

was necessary by trying the case on mixed principles of tort and contract law." Id. The risk of confusion and complexity that plagued the North Dakota Supreme Court in Ehrmantrout promises to enter this case if the complaint is allowed to be amended. The evidence in this case establishes that the parties have a dispute about a single contract term. Any attempt to expand the claims beyond the terms of the oral contract are simply not supported by clear and convincing evidence, and threaten to confuse and obscure the contractual dispute that is the essence of this action.

Simply put, if the facts are as alleged by the Fuglebergs, Triangle Ag breached an oral contract by refusing to honor the "cancellation" provision bargained for and contained in the contract. This refusal may subject Triangle Ag to resulting damages available for the breach of an agreement for the sale of goods under the UCC. Ehrmantrout at 237. There is no evidence of any independent tort. The only question for the Court is whether Triangle Ag or the Fuglebergs breached the oral contract. It is axiomatic that punitive damages are unavailable to the prevailing party in a simple contract action.

**3. Summary Judgment on Punitive Damages Issue**

The Fuglebergs assert that a "prayer for punitive damages is not amenable to summary judgment" because it is not a separate claim from the claim seeking compensatory damages. (Doc # 227, ¶ 10). Given the above and foregoing discussion this issue is moot.

**B. OTHER SUMMARY JUDGMENT MOTIONS**

**1. Triangle Ag's Motion for Summary Judgment on All Fugleberg Counts**

a. Tort Claims

Triangle Ag has moved for summary judgment on counts 1-5 and 7-8 of the Fuglebergs' Second Amended Complaint. (Docs. # 97, 188). Count 6 is against Cooperative Finance. Triangle

Ag alleges that this is a contract dispute and that the Fuglebergs' tort claims are barred by North Dakota law. The summary judgment analysis on the tort claims is identical to that just discussed regarding the Fuglebergs' attempt to modify its complaint. To recover in tort in a breach of contract case, "Tortious conduct must exist independently of the breach of contract and there must be proof of actual damages resulting from the independent tort." Pioneer Fuels, 474 N.W.2d at 710. While the intentional tort may occur at the time of and in connection with the breach, or may arise out of the same transaction, it is not committed merely by breaching the contract, even if the act is intentional. Id.

As discussed above the Court can find no support for any tort claim in Counts 3 and 5 independent of the breach of contract claims . Accordingly, summary judgment is proper on both Counts 3 and 5 of Plaintiffs Second Amended Complaint. (Doc. # 97).

b. Other Counts

Count 7 alleges that the Fuglebergs are entitled to relief under the doctrine of "promissory/equitable estoppel". (Doc # 97, ¶¶ 37-44). The doctrine of promissory estoppel acts as a substitute for consideration necessary to create a contract where the party relying on a promise has detrimentally relied and the refusal to enforce the promise would result in injustice. Mills v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 703 F2d 305, 308 (8th Cir. 1983). Before the doctrine of promissory estoppel can be invoked, four elements must be established: 1) A promise the promissor should reasonably expect to cause the promisee to change his position; 2) A substantial change in the the promissee's position through action or forbearance; 3) Justifiable reliance on the promise; and 4) An injustice which can only be avoided by enforcing the promise. University Development, LLC v. Dusterhoft Oil , Inc., 715 N.W. 2d 153,157 (N.D. 2006). Promissory estoppel

13

is a substitute for a contract remedy where no contract has been formed for lack of consideration. Mahony v. Universal Pediatric Services, Inc., 753 F. Supp. 2d 839, 859 (S.D. Iowa 2010).

Here, the parties all agree that a contract was formed, and the evidence reflects this is true. When a contract is breached ,the measure of damages is the benefit of the bargain. Leingang v. City of Mandan Weed Bd., 468 N.W. 2d 397, 398 (N.D. 1991). Contract damages should give the non-breaching party the benefit of the bargain by awarding a sum of money that will put the party in as good a position as if the contract had been fully performed. Id. Because an oral contract exists between Triangle Ag and the Fuglebergs, an adequate contract remedy exists at law, once the finder of fact determines the terms of that contract. Because promissory estoppel is a substitute for contract remedies and there are contract remedies available in the case at bar, count 7 of the Fuglebergs' Second Amended Complaint relating to promissory/equitable estoppel must be dismissed.

In Counts 1 and 2, the Fuglebergs seek rescission of the contract. The elements of a rescission action are 1) consent to the contract obtained through fraud; 2) exercise of diligence in rescinding upon discovery of the fraud; and 3) restoration of the status quo. Holcomb v. Zinke, 365 N.W. 2d 507, 511 (N.D. 1985). As noted above, the Court finds no evidence of fraud in the inducement in this contract. The evidence reflects that both parties expected to perform at the time the contract was entered into, although each had a different understanding of the contract terms. The alleged oral "cancellation provision" would not be a rescission term, but rather an alternative method of full performance. If the cancellation provision was in fact agreed to by the parties, the Fuglebergs concede that they would have to pay the $50 per ton charge to Triangle Ag plus all accrued interest to Cooperative Finance. The Fuglebergs do not urge the Court to put everyone back to the position they were in prior to the contract's inception.

Under the circumstances presented in this case, allowing the rescission claim to stand would create an election of remedies problem. That is, the Fuglebergs are in a logically inconsistent position. While pleading in the alternative is certainly permissible, at trial a party cannot claim rescission and deny the contract and at the same time affirm the contract and seek damages for its breach. Breach of contract damages and rescission are inconsistent remedies because the one assumes and affirms the contract and the other denies and unmakes the contract. Northwestern State Bank v. Foss, 197 n.W.2d 662 665 ( Minn. 1972). Here all parties agree that there is an oral contract. Therefore counts 1 and 2 are dismissed because rescission is unavailable when contract damages are available.

**2. Dismissal of Randy Fugleberg's Claims and Rule 11 Sanctions**

Triangle Ag seeks to dismiss Randy Fugleberg's personal claims set forth in the Fuglebergs' Second Amended Complaint. While it does appear likely that Randy Fugleberg has no individual contract claim against Triangle Ag, Triangle Ag has asserted a counterclaim against him personally. Furthermore, Randy Fugleberg remains obligated on his note with Cooperative Finance, and Triangle received money from Cooperative Finance by virtue of the note signed by Randy Fugleberg (Doc #151-6). Finally, Randy Fugleberg will by necessity be present as the corporate representative of A& R Fugleberg Farms and the Court sees no harm to Triangle Ag if Randy Fugleberg remains in the action until the contract claim is tried. This will allow the Court to fashion complete relief once a fact determination is made as to the terms of the contract between Triangle Ag and the Fuglebergs. For these same reasons, the Court denies Triangle Ag's motion for sanctions against

Randy Fugleberg personally.[1]

### 3. Cooperative Finance's Motion for Summary Judgment against the Fuglebergs

In July 2008, Cooperative Finance loaned the Fuglebergs $127,175.00 each on three separate promissory notes. (Doc. # 151-1). The face amount of each note was $150,000. At the time Triangle Ag purchased the fertilizer, however, only the $127,175.00 due on each note had been advanced to Triangle Ag. The Fuglebergs contend that they have a "right to cancel their outstanding obligations to [Cooperative Finance] by tendering Defendants the outstanding interest owed on the financing provided by [Cooperative Finance]." (Doc. # 97, ¶35). Unlike the contract with Triangle Ag, the agreements with Cooperative Finance are in writing and by their language are fully integrated.. (Doc. # 151-1). The agreements provide:

> Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (Borrower) and us (Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

(Doc. 151-6 pp. 6, 12, 16).

The Fuglebergs have testified they understood the integration clause and that no modifications of the written agreements with Cooperative Finance have taken place. (Doc. #151-1, R. Fugleberg dep. 122:9-123:1; Doc # 165 N. Fugleberg Dep. 195:11-196:8; Doc. 163 J. Fugleberg Dep. 64:9-65:14). It is undisputed that Cooperative Finance advanced loan proceeds to Triangle Ag at the direction of the Fuglebergs. The Fuglebergs have not alleged any wrongdoing on the part of

---

[1]The court also notes that it appears that Randy Fugelberg's involvement in the case has caused virtually no increase in the litigation costs of the case as his involvement with Fugleberg Farms would have necessitated his involvement in any event.

Cooperative Finance, but contend they have not paid Cooperative Finance solely because of the contract dispute with Triangle Ag. (Doc # 151-1 R. Fugleberg Dep. 123:2-14, 132:9-134:13; Doc. # 162 80:23-85:9; Doc. #165 Dep 193:6-194:16; Doc #163 Dep. 46:14-24, 50:2-23, 67:25-71:10). It is further undisputed that the notes remain unpaid.

Cooperative Finance urges the Court to apply Missouri law, arguing that this was provided for in the promissory notes. (Doc #151-1). Under Missouri law, interpretation of an unambiguous written contract is a question of law for the Court. Cavalier Homes of Alabama, inc. v. Security Pacific Housing Services, 5 F. Supp. 2d 712,716 (E.D. Mo. 1997). The same standard governs if the Court applies North Dakota law. If the parties intentions can be ascertained from the writing alone, the interpretation of the contract is a question of law for the court. Metcalf v. Security intern. Ins. Co., 261 N.W. 2d 795, 799 (N.D. 1977). The three notes at issue contain an unequivocal obligation to repay the sums advanced at the date of maturity, February 15, 2010. The maturity date has arrived and the notes have not been repaid. The Fuglebergs allege no wrongdoing on the part of Cooperative Finance. Rather, their claim is solely against Triangle Ag and its agents, Poppel and Fronning. The Fuglebergs attempt to avoid the clear obligation under the notes by asserting that Triangle Ag was an agent of Cooperative Finance.

Under North Dakota law, an agency relationship is created when the principal authorizes the agent to act for the principal in dealing with third parties. N.D. Cent Code §3-01-01. It is undisputed that Triangle Ag was authorized to act on Cooperative Finance's behalf for at least some purposes. (Doc # 251 p. 6). The Court cannot, as a matter of law, determine exactly what authority the agency relationship conferred. Thus, the actual or ostensible authority of Triangle Ag to act on the behalf of Cooperative Finance is a question that must be resolved at trial. Therefore, Cooperative Finance's

Motion for Summary Judgement against the Fuglebergs is denied.

## CONCLUSION

For the foregoing reasons, the **ORDER** (Doc. #186) granting the Fuglebergs' motion for leave to amend their complaint to assert a claim for punitive damages (Doc. #141) is hereby **REVERSED.** Defendant Triangle Ag's Motion for Summary Judgment on the Fuglebergs' claims for punitive damages (Doc # 201) is **DISMISSED** as moot.

Triangle Ag's Motion for Summary Judgement (Doc #188) on Counts 1, 2, 3, 5, and 7 of the Fuglebergs' complaint is **GRANTED**. Triangle Ag's Motion for sanctions against Randy Fugleberg (Doc # 198) and Summary Judgment on the Individual Claims of Randy Fugleberg (Doc# 206) are **DENIED**. The Fuglebergs' Motion for Summary Judgement on Triangle Ag's contract claim is **DENIED**. Finally Cooperative Finance's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated this 28th day of October, 2011.

    /s/ Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court